## No. 138.

STATE EX REL W. H. BENSON *v.* THOMAS DUFFY, SHERIFF.

Three principles of interpretation:
(1) Exceptions to legislation of a general nature are not to be extended;
(2) Legislation of a remedial character is to be given a force and application as wide as possible;
(3) Laws must be construed so as to harmonize.

Judges of the Courts of Appeal have jurisdiction and power to issue writs of *habeas corpus* at the instance of all persons in actual custody within their respective circuits. Art. 104 Constitution (1879).

Courts have power to punish for contempt a husband who fails to obey its order that he pay alimony *"pendente lite"*.

Imprisonment of husband for failure to pay alimony is not imprisonment for debt but rather imprisonment for contempt of a court order.

*B. R. Forman,* attorney.

*F. W. Baker,* attorney.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

On question of jurisdiction.

The purpose, which exclusive of all others, should actuate judges, when seeking to interpret legislative provisions, is the seeking of the legislative intent. This frequently is a task of much difficulty and therefore certain general principals have been adopted which experience has shown to be correct, and useful as guides, in the accomplishment of this task. Frequently different ones of these rules may be found applicable but leading to different conclusions.

In such cases the court has to select and apply the one which in their estimation serves best the object in view, which is the ascertainment of the legislative intent. In this case article 104 of the Constitution of 1879 is to the following effect;

The judges of the courts of appeal, shall have power to issue writs of *Habeas Corpus* at the instance of all persons in actual custody within their respective circuits, they also have authority to issue writs of *mandamus,* prohibition and *certiorari* in aid of their appellate jurisdiction.

If we apply these provisions it will be observed that the authority conferred in relations to the writs of *mandamus,* prohibition and *certiorari,* is restricted to cases where they are necessary in aid of the appellate jurisdiction of the court, as to the writ of *Habeas Corpus,* however, the only restriction is that the applicant shall be in actual custody.

But article 128, Constitution 1879 has amongst other provisions applicable to this court, the following clause, "It shall have authority to issue writs of *mandamus,* prohibition, *certiorari* and *habeas corpus,* in aid of its appellate jurisdiction." This provision in my judgment certainly restricts the right of this court, in the issuance of these writs, to cases, where they are necessary to maintain or enforce our appellate jurisdiction. We held in Howard, Liquidator vs. Lacroix, 1 McGloin, that the law creating a court is its warrant of authority beyond which it cannot go. Articles 128 and 129 Constitution 1879 defines the jurisdiction of this court and what they authorize us to do, by expression or clear implication, we may do and no more. We therefore as a court cannot issue the writ of *habeas corpus* except as stated, in aid of our appellate jurisdiction. The question therefore comes up, is article 104 applicable to judges of this court? We have declared that this court is one of a special character, and not a circuit court of appeals for this state and that constitutional provisions relating to circuit courts of appeal in this state, are not applicable to this tribunal unless they relate to terms of office, or salary, or mode of proceedings, specially authorized by Constitutional article 129, Sara vs. L. Hote, No. 74 on docket of this court. We still hold this opinion. Nevertheless, although not one of the circuit courts of appeal for this state, yet this tribunal is certainly a court of appeals for this state and the judges thereof are judges of courts of appeal, as the term is used in the Constitution article 104. Indeed Const. Art. 80, vests the full jurisdiction, judicial, of the state in a Supreme Court, courts of appeal (referring to this tribunal) so Const. 128, says (there shall be a court of appeals for said parish, etc.). It is urged, however, with much force that this court is cre-

ated by special provisions of the Constitution, which provisions are in the nature of special legislation which is usually held manifested by that of a general character. It is urged that Art. 129 Const. restricts the application of provisions, intended for the circuit court to this tribunal to certain specified subjects as referred to above, Article 95, etc., are under the general headings of Courts of Appeal, and it itself is not restricted to circuit courts of appeal. Though other articles under the same division do not make a distinction; it is only an implication that all of these articles were intended to apply solely to the circuit courts. The implication, however, is not clear, but on the contrary, the use of the general term "courts of appeals" in many of the articles instead of the restricted one "circuit court of appeals" is hoped to destroy it. I am not satisfied that the Constitution intended to exclude this court from the operation of even provisions found in article 95 *et seq.*, and I believe that the principles of interpretation applicable are, first, that exceptions to legislation of a general nature are not to be extended; second, that legislation of a remedial character is to be given a force and application as wide as possible; third, that laws must be construed so as to harmonize. Therefore, as the occupants of this bench are "judges of courts of appeals", and the article itself makes no restriction that it is applicable to us, and that, we have the powers confirmed by it. Courts must endeavor to avoid creating a conflict of legislation, and I see no reason for creating such conflict here. Art. 129 governing this court, does not militate against Art. 104 as applied to its judges, for it was competent, constitutional legislation to regulate these matters at their pleasure, assigning duties to the court and others of a different nature to the members thereof. While as a court I conclude with my learned brother, that we have no jurisdiction, yet, as judges, together, or separately, I think we can grant relief. My views upon the merits of the application have been already expressed, as also those of my colleague. We therefore denied, by myself for reasons touching upon

the merits, and by my colleague, by reason of his opinion, that there is no jurisdiction in either the court or judges.

HABEAS CORPUS by His Honor W. H. Rogers.

The constitution of this state has declared its judiciary department to be vested in a Supreme Court, Circuit Courts of Appeal, and District Courts, and has defined the particular jurisdiction of each and wherever that function is declared to exist in the court, it has necessarily reference to the judge or judges presiding in the particular court. The limit of the power of the judge or judges is that of the court, and as great a power can be exercised by those, who at the moment exercise the judicial function. If this tribunal has appellate jurisdiction only, no power beyond that grant is vested in the judges or in either of the judges thereof. Art. 128 of the constitution particularly determines the power and jurisdiction of this court, and it is elementary that courts are to be governed by the expressed law and not to reach conclusions from provisions, susceptible of different or uncertain applications—Art. 129 provided that wherein the rules and provisions relating to circuit courts in the state shall apply to the courts of appeals for the Parish of Orleans. The reason for these enactments are not questions of concern to us. Art. 128 declares, this court shall have power to issue writs of *mandamus*, prohibition, *certiorari*, and *habeas corpus* in aid of its appellate jurisdiction. This court has no original jurisdiction. It is exclusively appellate. Art. 129 provided, the provisions of the constitution relating to the term of office, qualification, and salary of the judges of the circuit courts of appeal, shall apply to the court and its judges. The special reference to a concurring jurisdiction with circuit court of appeals, throughout the state, in no manner disturbs the power to issue the writs in aid of its appellate jurisdiction, defined in article 128, the present application arises from a judgment rendered by the district judge in a case in which we have no appellate jurisdiction, and we therefore cannot entertain the application.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

W. H. Benson, during the progress of a suit, instituted against him by his wife for a divorce, was ordered to furnish alimony *pendente lite* to his wife, in the sum of $30.00 per month. He failed or refused to obey this order, and upon rule to show cause was adjudged as being in contempt of this authority, and committed to imprisonment for a period of 10 days. After appealling vainly to the Supreme Court of the State of Louisiana for writs of *habeas corpus* or *certiorari,* which were refused, he has invoked the interference of this court upon the application of a writ of *habeas corpus.* The return of the sheriff, refers for his warrant to the commitment of Honorable Henry L. Lazarus, judge of division E, Civil District Court of this parish, which commitment gives full restatement of the facts. It is urged that this court and its judges, are without jurisdiction in the premises. Upon this question separate opinions have been prepared to which reference is made. It is urged again that the order complained of is in effect a monied judgment, and should be signed before becoming final. The decree in question has about it nothing definitive in its nature. Its continuance and enforcement, contain matters of discretion with the judges rendering it, and may be varied according to the fluctuation of the husband's fortune, or denied if the wife absents herself from the assigned domicile. (Civil Code La. Arts. 148, 231, 232, and 233). It is only a final and definitive judgment which must be signed, Code of Practice, Arts. 544, 546.

It is contended that the order in question imposes in favor of the wife, a monied obligation, and that by article—act of 28 March 1840, imprisonment for debt was abolished in this state, and that in contravention of this provision, applicant is now imprisoned. If the claim of the wife has in it nothing beyond a mere debt, the application would certainly apply. The question therefore forces itself upon us for determination, whether the obligation to furnish alimony in this or other cases provided by law, is in the nature of a debt. C.C. Art.

230, is to this effect—"By alimony, we understand, what is necessary for nourishment, lodging, and support of the person who claims it. It includes the education when the person, to whom alimony is due is a minor." Fuals Bishop on Marriage and Divorce, section 351, and citations in note one. The obligation to pay or furnish alimony, rests upon the duty, natural, religious and legal, of supporting those who hold toward us, certain relations and whose maintenance we are not permitted to cast upon the general public, if our means are sufficient to provide for them. This duty is declared to fasten upon parents as to children, by the very act of marriage, La. C.C. 227, so children must support their needy parents and ascendants, and while the latter must keep their descendants from want. La. C.C. Art. 229. Even illegitimate children and their parents owe each other alimony, under certain circumstances C.C. 239, 240. So the husband and wife owe to each other mutual support and assistance, C.C. 119, Art. 148, La. C.C. This obligation is continued in favor of the wife who sues for a divorce or separation pending the suit. The purpose of the law, in cases when it awards the alimony, is to compel the husband to continue the performance of this duty towards his wife, despite the suit, and such is the purpose of the court when they enforce its provisions, which have for their object the maintenance of the wife. I consider it undoubted that when the courts of this state decree in fact or effect the performance of any obligation, which is not the payment of a debt, that they may cause their orders to be respected, and that refusal to obey is a contempt, punishable as such. This they are constantly doing, when parties withhold property ordered to be delivered to the sheriff, or disobey injunctions, *mandamus*, or other such writs. In the case of Dumas vs. Boulin, 122, lately decided, we held that the Code of Practice, in requiring that a deposit of $12.00 as a jury fee from a party applying for such a method of trial did not destroy the obligation, which was also imposed upon such parties of securing the prompt payment of the jury to be impaneled, but this was but a method that the law had adopted to secure its end, and

that the duty it implied still remained undischarged by the simple deposit. So in this case I think the bare fact that the law authorizes the judge to fix a monthly sum to stand in lieu of actual support, does not deprive the duty or decree of its character of an enforcement of this duty of maintenance. There are no authorities bearing upon this question in our state. But the authorities of England, and our sister states are overwhelmingly in support of the view herein expressed and are almost unanimous in declaring conduct such as that complained of against relator a contempt, punishable as such. This obligation imposed by the law in this case is not a debt, for a debt is fixed by contract or by law, and is beyond diminution or expansion by the courts. A claim for alimony, however, is subject to his control, and has nothing unalterable about it. It is based upon principles of public policy more than of individual right and it is not clear that legislation prohibiting imprisonment for debt, can be applicable to it. As this opinion was necessarily prepared in great haste, I reserve the right thereafter of adding thereto and amplifying authorities should I so desire.

The following dissenting opinion was delivered by His Honor Judge W. H. Rogers.

The courts must be governed by the express provision of the law. And in this case the relator has been adjudged to pay to a party, a certain sum of money. It is true that the cause of the judgment appears in the returns to be as alimony to his wife during the pendency of a suit for separation from bed and board, and that it was decreed by virtue of article 148 C.C., specifically declaring that the judge may render under certain conditions of fact a sum for her support, it is likewise true, that alimony means nourishment and a supply of necessities and that to this extent the application of the term applies to causes wherein the law grants it.

It may be well said it is an order to do a particular thing, but that particular thing is to pay a sum of money. Art. 628 C.P. says, orders of execution are different, according to the nature of the judgment to be executed—for these judgments

may direct that a thing shall be given or a thing be done or omitted, or a sum of money paid, and this variety subjects the execution to different rules which are explained in the two.

We have therefore provisions of law, regulating the execution of judgments which require something to be given or to be done, (630 *et seq.*), and provisions governing the execution of judgments directing the payment of a sum of money (641 *et seq.*).

Under this distinction the law directs the collection by writs of *fi fa* or in some certain cases, by *distringas*.

A decree for alimony is a definitive judgment, as far as an interlocutory judgment can be definitive is undoubted. Succession of Lyons, 22 Ann.; State *ex rel* Mulody, 22 Ann; Madden vs. Fielding, 19 Ann. 505; Compton vs. Abicul, 9 Ann. 496.

There has been no conflict on this point evidently. The question of the right to imprison for a failure to satisfy a judgment for alimony as a contempt has not been urged before our highest tribunal, I believe, so far as careful examination on my part has been able to determine. I am aware that my learned brother of the district court, has numerous authorities to sustain his views, but they proceed from reasoning on general principles of authority of courts under circumstances of proceedings such as the one before us. Suits for divorce and separation are not encouraged, under our system. Although marriage is a civil contract, its dissolution cannot occur by consent, and the reasons for a dissolution are restricted. I do not dispute the legal position of other judges, who have held that an imprisonment for contempt may be had in a case like the one before me, but while expressing my respect, I do not feel at liberty to supply arguments or reasons, in opposition to the plain behest of a written law. The prisoner should be discharged.